## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Wendkouni Wilfried Arnold Zongo,

        Plaintiff,

v.

Carver County; Jason Kamerud, Sheriff of
Carver County; Jane Doe 1, Nurse at
Carver County Jail; Unknown number of
unknown named Correctional Officers,

        Defendants.

Civ. No. 21-1521 (NEB/BRT)

**REPORT AND
RECOMMENDATION**

Wendkouni Wilfried Arnold Zongo, *pro se* Plaintiff.

Aaron M. Bostrom, Esq., Stephanie A. Angolkar, Esq., United States Attorney's Office,
counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

      This case arises from *pro se* Plaintiff Wendkouni Wilfried Arnold Zongo's

detention at Carver County Jail ("the Jail"), where he was held overnight as a detainee by

Immigration and Customs Enforcement ("ICE"). As background, Plaintiff filed his

original Complaint on June 28, 2021; he timely moved to amend five days after

Defendants moved to dismiss his original Complaint. (Doc. Nos. 1, 14, 22.) Defendants

opposed Plaintiff's motion to amend. (Doc. No. 23.) This Court granted Plaintiff's

motion to amend and denied Defendants' motion to dismiss Plaintiff's original Complaint

as moot. (Doc. No. 24.) Plaintiff's First Amended Complaint then became the operative Complaint. (Doc. No. 25 ("1st Am. Compl.").)[1]

    In his First Amended Complaint, Plaintiff alleges claims of wrongful detention, unreasonable search and seizure, unconstitutional conditions of confinement, conspiracy, and deliberate indifference under 42 U.S.C. § 1983, all stemming from his overnight detention at the Jail. (*See generally* 1st Am. Compl.) In addition, Plaintiff raises a disability discrimination claim under Section 504 of the Rehabilitation Act and tort claims for unjust enrichment and false imprisonment. (*Id.*) Plaintiff's First Amended Complaint names several Defendants: Carver County; Jason Kamerud in his "official capacity as the Carver County Sheriff"; "Jane Doe"[2] in her "official and individual capacity as a nurse working for the Carver County Jail"; and "Unknown number of unknown named Correctional Officers" in "their individual capacities for being Correctional Officers involved in the approval and execution of Mr. Zongo's unlawful confinement at the Carver County Jail." (*Id.* ¶¶ 13–16.)

    Defendants moved to dismiss Plaintiff's First Amended Complaint on December 14, 2021. (Doc. No. 27.) Plaintiff has not responded to Defendant's motion to

---

[1]    Plaintiff also mailed a memorandum of law in opposition to Defendants' motion to dismiss his original Complaint on November 19, 2021, but it was not received by the Court until November 29, 2021, by which point this Court had already granted Plaintiff's motion to amend his original Complaint and denied Defendants' motion to dismiss Plaintiff's original Complaint as moot. (Doc. No. 26.)

[2]    Throughout his First Amended Complaint, Plaintiff interchangeably uses the names "Jane Doe" and "Jane Doe 1" for the same Defendant. This Court will use the name "Jane Doe" for the sake of consistency.

dismiss his First Amended Complaint. For the reasons stated below, this Court recommends that Defendants' motion to dismiss (Doc. No. 27) be granted and Plaintiff's action be dismissed.

## I.    BACKGROUND

Plaintiff alleges he was lawfully admitted into the United States as a student. (1st Am. Compl. ¶ 17.) According to Plaintiff, on September 2, 2020, ICE agents arrested him without a warrant and without charging him with an immigration violation. (*Id.* ¶ 18.) After his arrest, ICE then remanded Plaintiff to immigration custody at the Jail. (*Id.* ¶¶ 18–19.) Upon arrival, the Jail staff "strip searched" Plaintiff. (*Id.* ¶ 30.) At the time, Plaintiff alleges that COVID-19 guidelines under the Center for Disease Control ("CDC") recommended quarantining all new inmates for fourteen days before they entered general population and that ICE guidelines recommended that detainees should be screened before entering a facility. (*Id.* ¶¶ 23–28.) Plaintiff, however, claims that the Jail failed to follow either guideline from ICE or the CDC by placing him in general population without quarantining him or medical screening for his "underlying medical condition or needs." (*Id.* ¶¶ 28–29.)

Plaintiff claims that he informed a correctional officer that he suffered from "chronic acute pancreatitis and urgently needed his medication." (*Id.* ¶ 35.) The correctional officer asked if Plaintiff had his medication with him; Plaintiff said he did not. (*Id.* ¶¶ 36–37.) The officer asked if Plaintiff could have someone deliver it from his home, but Plaintiff told her his home was locked. (*Id.* ¶¶ 38–39.) The officer called a nurse, "Jane Doe," who asked Plaintiff some questions and then "assured him" that he

would "get his medication by the morning." (*Id.* ¶ 40.) That night, Plaintiff could not eat

or sleep due to abdominal pain. (*Id.* ¶¶ 42–43.) The next morning, a nurse informed

Plaintiff that "she was not aware of any medication" to give him. (*Id.* ¶ 45.) Plaintiff "did

not have breakfast because the pains were incapacitating him." (*Id.* ¶ 46.) An ICE agent

then transported Plaintiff out of the Jail to ICE headquarters. (*Id.*)

Based on these alleged facts, Plaintiff asserts seven distinct counts in his First

Amended Complaint, which are quoted below:

> Count 1: Violation of Fourth Amendment of the US Constitution: Wrongful
> Detention (Against Jason Kamerud and Unknown number of unknown
> named Correctional Officers);

> Count 2: Deliberate Indifference to Mr. Zongo's Safety and Medical Needs
> Under the Fourteenth Amendment of the US Constitution ([Against] Jason
> Kamerud; Jane Doe []);

> Count 3: Detention in Condition Tantamount to Punishment Under the
> Fourteenth Amendment of the US Constitution (Against Carver County);

> Count 4: Violation of Section 504 of the Rehab Act (Against Jason
> Kamerud);

> Count 5: Common Law Unjust Enrichment Claim (Against Defendants
> Carver County);

> Count 6: Common Law False Imprisonement (sic) Claim (Against
> Jason Kamerud and Unknown number of unknown named Correctional
> Officers);

> Count 7: Conspiracy to Deprive Plaintiff of Equal Protection of Law and of
> his Constitutionally Protected Liberty (Against Jason Kamerud and
> Unknown number of unknown named Correctional Officers).

(*Id.* ¶¶ 48–85.) Plaintiff seeks multiple forms of relief, including monetary compensation.

(*Id.* ¶ 86.)

## II.     MOTION TO DISMISS

Defendants move to dismiss Plaintiff's First Amended Complaint. (Doc. No. 27.) They argue that Plaintiff's claims are based on several incorrect premises and insufficiently pled. (*See generally* Doc. No. 30, Mem. of Law in Supp. of Carver Cty. Defs.' Mot. to Dismiss Am. Compl. ("Defs.' Mem.").)

### A.     Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court accepts as true all factual allegations, however, the Court need not accept as true conclusory allegations or legal conclusions "couched as factual allegations." *Hager v. Arkansas Dep't. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility'" and must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 556–57).

B.    **Plaintiff's 42 U.S.C. § 1983 Claims**

Plaintiff brings claims under 42 U.S.C. § 1983 for wrongful imprisonment, unconstitutional conditions of confinement, conspiracy, unreasonable search and seizure, and deliberate indifference. Some of these claims name Carver County, a municipality, as a Defendant. Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). Several of Plaintiff's § 1983 claims are asserted against Sheriff Kamerud in his official capacity. A claim against a government employee in his official capacity is a suit against the entity that employs him. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, a suit against Sheriff Kamerud in his official capacity is one against Carver County. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n. 55 (1978). ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

In addition to his claims against Carver County, Plaintiff's names as Defendants various unnamed correctional officers, referred to as "Unknown number of unknown named Correctional Officers," in their individual capacities. (1st Am. Compl. ¶ 16.)

Plaintiff states these Defendants were involved in the "approval and execution" of his confinement at the Carver County Jail and will be identified and served during discovery. (*Id.*)

Finally, Plaintiff brings a deliberate indifference claim against the nurse "Jane Doe" in her official and individual capacity. Defendants note that "Jane Doe" works for MEnD Correctional Care PLLC, which operates as a healthcare provider contracted by the Jail. (Defs.' Mem. 5.) A medical contractor for a jail may also be held liable under § 1983. *See Burke v. North Dakota Dept. of Corrections and Rehabilitation*, 294 F.3d 1043, 1044 (8th Cir. 2002). However, a person cannot maintain a *respondeat superior* theory of liability against a corporation based upon the allegedly wrongful actions of its employees. *See id.*; *see also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993). Thus, "Jane Doe" in her official capacity as MEnD Correctional Care PLLC may only be held liable under § 1983 if MEnD Correctional Care PLLC had a "policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

### 1. Plaintiff's Claims Against "Unknown number of unknown named Correctional Officers" (named as Defendants in Counts One, Six, and Seven)

As part of his § 1983 action, Plaintiff makes claims against various unnamed correctional officers who he alleges were involved in the "approval and execution" of his confinement at the Carver County Jail. (1st Am. Compl. ¶ 16.) Defendants argue that naming "fictious parties as defendants in federal court" is generally impermissible, and that because the Court "cannot independently assess each defendant's conduct," the Court

should dispose of Plaintiff's claims against the "Unknown number of unknown named Correctional Officers." (Defs.' Mem. 7.)

"[A]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (citation and quotations omitted). Plaintiff does not specify what actions each of unnamed correctional officers took, how they were involved in the approval and execution of his confinement, or any other facts that would permit them to be identified through discovery. *See id.* Because of this, the allegations Plaintiff raises against "Unknown number of unknown named Correctional Officers" in Counts One, Six, and Seven are "not sufficiently specific to satisfy the exception to the general prohibition against fictitious parties." *Sullivan v. Med. Staff*, No. 8:21CV287, 2021 WL 5447664, at *2 (D. Neb. Nov. 22, 2021) (concluding that "[u]nknown, unnamed Defendants characterized as 'medical staff'" and who were not identified and were "alleged to have neglected [the] [p]laintiff's medical needs after his fall" were "not sufficiently specific to satisfy the exception to the general prohibition against fictitious parties"). Thus, this Court recommends dismissing the "Unknown number of unknown named Correctional Officers" as Defendants from this action.[3]

---

[3]    Even if Plaintiff's claims against "Unknown number of unknown named Correctional Officers" were sufficiently specific, Plaintiff's claims against the unnamed officers in Counts One, Six, and Seven would also fail for the reasons below.

### 2. Plaintiff's Wrongful Detention and Strip Search Claims (Count One)

Plaintiff alleges in Count One that Carver County Sheriff Kamerud in his official capacity (i.e., Carver County) violated his Fourth Amendment rights by wrongfully imprisoning him. Plaintiff also alleges that his strip search before he was booked in the Jail violated the Fourth Amendment's prohibition against unreasonable searches. Defendants argue that Plaintiff was legally detained by ICE and not Carver County. They also argue that Plaintiff has failed to plead facts that demonstrate his strip search was unreasonable.

### i. Wrongful Imprisonment Claim

As part of Count One, Plaintiff alleges that Carver County has a policy of accepting and holding ICE detainees without assuring that they are legally detained by ICE. (1st Am. Compl. ¶¶ 48–55.) This, he asserts, is part of an "intergovernmental agreement" that Carver County entered into "with ICE to house ICE's detainees." (*Id.* ¶¶ 21.) Against this backdrop, Plaintiff claims ICE agents arrested him on September 2, 2020, and then transported him to Carver County Jail where he was held pursuant to the aforementioned intergovernmental agreement.[4] (1st Am. Compl. ¶¶ 18–21.) Plaintiff

---

[4]     As noted above, after Defendants filed a motion to dismiss Plaintiff's original Complaint, Plaintiff filed a memorandum in opposition. (Doc. No. 26.) Plaintiff's memorandum discussed the alleged circumstances of his arrest. According to Plaintiff, he was imprisoned as a result of an "*ex parte* administrative order of detention issued and signed by an Article II officer of the US with no authority whatsoever to commit individuals to jail, ensuing a false arrest." (Doc. No. 26 at 26.) He adds that the Carver County Sheriff "deliberately instructed his correctional officer to obey the orders of a commitment instrument he knew or ought to have known was without its jurisdiction and void." (*Id.*)

claims that because he was "not the subject of an immigration warrant" and "not in removal proceedings," Defendants "did not even have the authority to detain" him and thus violated his Fourth Amendment rights by wrongfully imprisoning him "without any legal justification." (*Id.* ¶¶ 50–52.) In response, Defendants argue Plaintiff's wrongful imprisonment claim should be dismissed because Plaintiff has named the wrong defendant. They argue that because ICE arrested and seized Plaintiff, Plaintiff's claims of wrongful arrest and detention should be directed at ICE, the only possible defendant for these claims. (Defs.' Mem. 8.)

"The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017). Ultimately, it is the Attorney General, and thus ICE, who has the authority to "arrest and detain an alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018). Here, according to Plaintiff, ICE arrested him and then transported him to the Jail where he was held in accordance with an intergovernmental agreement that allowed Carver County to hold's ICE's detainees. (1st Am. Compl. ¶ 21.) Plaintiff's wrongful imprisonment claim challenges ICE's authority to arrest and detain him. But Plaintiff's claim is asserted against Carvery County.[5] Carver County does not maintain the authority to arrest and

---

[5]     As the Southern District of Florida has elaborated, "when a federal immigrant detainee is housed in a contract facility, the federal official charged with overseeing the detainees in that facility is more akin to the 'immediate custodian'—the individual with the power to produce the body of the petitioner before the court—than a non-federal warden." *Masingene v. Martin*, 424 F. Supp. 3d 1298, 1302 (S.D. Fla. 2020) (quotations omitted). This is because "[f]ederal immigration detainees are detained pursuant to the power and authority of the federal government and not the warden of the non-federal

detain Plaintiff. Nor is Plaintiff under Carver County's custody – he is in ICE's custody.[6]

Thus, Plaintiff fails to plead a viable wrongful imprisonment claim against Carver

County.[7] Because Plaintiff fails to state a constitutional violation under the Fourth

Amendment against Carver County for wrongful imprisonment, this Court recommends

that Plaintiff's wrongful imprisonment claim contained in Count One be dismissed.

---

facility where they are detained." *Id.* (quotations omitted). "A local warden's custody over the detainee is limited only to the extent provided by the facility's contract with the federal government . . . ICE is in complete control of detainees' admission and release." *Id.* (quotations omitted).

[6]    Plaintiff mailed a letter to the Court on December 12, 2021, indicating that he "was released from immigration custody on an order of supervision." (Doc. No. 34.) While Plaintiff was housed in Sherburne County Jail at the time of this filing and not Carver, Plaintiff's filing supports Defendants' position that while housed at a county jail, Plaintiff remained in ICE custody.

[7]    Plaintiff did not file any opposition to Defendants' pending motion to dismiss Plaintiff's First Amended Complaint. The Court notes, however, that he did file a memorandum in opposition to Defendants' first motion to dismiss, wherein he addresses Defendants' arguments regarding his wrongful imprisonment claim. (Doc. No. 26.) As part of his argument supporting his wrongful imprisonment claim, he cites to *Esparza v. Nobles County*, No. 53-CV-18-751, 2018 WL 6263254, at *1 (Minn. Dist. Ct. Oct. 19, 2018). In *Ezparza*, the plaintiffs argued they had been improperly detained by the Nobles County jail at the expiration of their sentence based on holds placed on them pursuant to ICE detainers. *Esparza v. Nobles Cty.*, No. A18-2011, 2019 WL 4594512, at *1 (Minn. Ct. App. Sept. 23, 2019). They argued on appeal of the district court's grant of their temporary injunction that the transfer of an individual from state custody to ICE custody constituted a "new arrest" and therefore required arrest authority and probable cause. *Id.* at *4. The Minnesota Court of Appeals affirmed the district court's temporary injunction, noting that "state and federal courts have determined that state and local officers seize an individual anew under the Fourth Amendment when they continue detention after an individual has been released from state custody." *Id.* In contrast, Plaintiff has pled facts that ICE arrested him, *then* transported him to the Jail where he was held overnight in ICE custody. Thus, unlike in *Ezparza*, Plaintiff was arrested and detained by ICE first and subsequently held in the Jail. *Ezparza* is therefore not persuasive.

ii.    **Strip Search Claim**

Also in Count One, Plaintiff alleges Carver County subjected him to an "unreasonable strip search" when he arrived at the Jail. (1st Am. Compl. ¶ 55.) But Plaintiff pleads no facts explaining why this strip search was unreasonable. He merely states that the search was not warranted based on his "criminal record or pending charges." (*Id.*) The Supreme Court has ruled that correctional officers must be allowed to conduct an effective search of detainees—even those held for minor offenses—before they are admitted to a general jail population. *See generally Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012); *see also Story v. Foote*, 782 F.3d 968, 971 (8th Cir. 2015) (citing *Florence*). Thus, simply having a criminal record of less serious crimes is not enough to establish a strip search was unreasonable. Plaintiff must plead more facts. Because he has not, Plaintiff fails to establish a Fourth Amendment violation. Accordingly, this Court recommends the dismissal of his strip search claim in Count One from Plaintiff's First Amended Complaint.

### 3.    **Plaintiff's Conspiracy Claim (Count Seven)**

In Count Seven, Plaintiff alleges a conspiracy claim against Carver County. (1st Am. Compl. ¶¶ 83–85.) To prove a § 1983 conspiracy claim, Plaintiff must show: (1) Defendants conspired to deprive him of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured him. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Plaintiff is also required to "prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id.*

Plaintiff alleges that Defendants unlawfully took custody of him and by doing so conspired with ICE to deprive him of his constitutional rights under the Fourth Amendment and the Fourteenth Amendment's Substantive and Procedural Due Process Clauses. But as discussed above, Plaintiff fails to allege an underlying violation of his Fourth Amendment rights against Carver County. Similarly, for the same reasons, Plaintiff also fails to allege a Fourteenth Amendment violation. Plaintiff's own allegations assert that ICE arrested him before he was held in the Carver County Jail. (1st Am. Compl. ¶¶ 18–22.) Thus, because the Carver County Defendants did not seize or detain Plaintiff, Plaintiff fails to state a constitutional violation. Without a constitutional violation, Plaintiff's conspiracy claim fails.[8] Therefore, Plaintiff fails to plead a conspiracy claim under § 1983, and this Court recommends the dismissal of Count Seven.

### 4.  Plaintiff's Deliberate Indifference Claim (Count Two)

In Count Two, Plaintiff alleges a deliberate indifference claim under the Fourteenth Amendment related to his acute pancreatitis. (1st Am. Compl. ¶¶ 56–61.) Plaintiff directs his claim against Defendants Sheriff Kamerud in his official capacity (i.e., Carver County) and "Jane Doe" in her individual and official capacity. As stated above, by naming "Jane Doe" in her official capacity, Plaintiff's claims are directed

---

[8]    Even if Plaintiff had alleged an underlying constitutional violation, he has not alleged facts sufficient to support the other elements of a conspiracy claim. A mere conclusory allegation that Carver County conspired with ICE is not sufficient under § 1983. "Speculation and conjecture are not enough to prove a conspiracy exist." *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999).

against MEnD Correctional Care PLLC, her employer. *Monell*, 436 U.S. at 691 n. 55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). "Typically, *Monell* claims are against governmental entities, such as Carver County, but courts have held that medical providers contracting with a jail may also be held liable if a plaintiff identifies a policy or custom that caused the plaintiff's injury." *Brenner v. Asfeld*, No. 18-CV-2383 (NEB/ECW), 2019 WL 2358451, at *8 (D. Minn. June 4, 2019) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997)) (quotations omitted). Thus, MEnD Correctional Care PLLC can be held liable under *Monell*.

        Plaintiff alleges that Defendants Kamerud and "Jane Doe" were deliberately indifferent to his safety and medical needs when they (1) failed to provide him medication for acute pancreatitis and a professional medical screening, and (2) placed him in general population for one night where he might contract COVID-19. (1st Am. Compl. ¶¶ 56–61.) Plaintiff's Due Process Clause claim under the Fourteenth Amendment is assessed under the deliberate indifference standard. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). The deliberate indifference standard has two components. First, the detainee must allege that he had an objectively serious medical need. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 1065. Second, the detainee must show that prison officials knew of, but deliberately disregarded, his serious medical need. *Id.* Plaintiff must show

"more than negligence, more even than gross negligence to evince deliberate indifference." *Id.* (quotations omitted). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Id.* (quotations omitted). A detainee "must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id.* at 1066 (quotations omitted) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997)). This is an "extremely high standard that requires a mental state" more "akin to criminal recklessness." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (quotations omitted).

### i.    Medication Delay and Medical Screening Claims

Plaintiff alleges that "Jane Doe" and Sheriff Kamerud were deliberately indifferent to treating his acute pancreatitis by not providing him with his pancreatitis medication and not having a medical professional conduct a medical screening. But as Defendants argue, Plaintiff has not alleged how Sheriff Kamerud in his official capacity knew of or even participated in decisions about Plaintiff's medication. "To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (citations omitted). Plaintiff has pled no facts showing how Sheriff Kamerud acted or used his authority in an unconstitutional manner. Thus, Plaintiff fails to

plead sufficient facts to show that Sheriff Kamerud, in his official capacity, deliberately disregarded his acute pancreatitis by delaying his medication.

In addition, Plaintiff fails to plead facts showing how "Jane Doe," either in her individual[9] or official capacity, deliberately disregarded his acute pancreatitis. Plaintiff alleges that "Jane Doe" informed him that he would receive his medication the next morning. But Plaintiff pleads no facts explaining how his lack of medication that night was due to any action by "Jane Doe" or her employer MEnD Correctional Care PLLC. Even if he could, he has not pled facts showing how any action by "Jane Doe" or MEnD Correctional Care PLLC rose above gross negligence to "intentional maltreatment or a refusal to provide essential care." *Buckman*, 756 F.3d at 1066. At most, Plaintiff has shown a delay in receiving medication. But a delay in receiving medication does not amount to deliberate indifference "unless the delay causes substantial harm." *Bellecourt v. United States*, 784 F. Supp. 623, 634 (D. Minn. 1992) (citation omitted). Plaintiff has not pled facts showing substantial harm.

---

[9]    "Individual capacity claims are prosecuted against the named individual and seek to impose personal liability." *Arashiba v. City of Minneapolis*, No. 20-CV-579 (PAM/DTS), 2021 WL 3276305, at *3 (D. Minn. Jan. 21, 2021), *report and recommendation adopted*, 2021 WL 754148 (D. Minn. Feb. 26, 2021). Here, the deliberate standard still requires that Plaintiff show he suffered from an objectively serious medical need and that "Jane Doe" in her individual capacity knew of but deliberately disregarded that need. *See, e.g.*, *Birdo v. Hutchison*, No. 20-CV-1925 (MJD/ECW), 2021 WL 3743521, at *5 (D. Minn. July 28, 2021*)* (applying deliberate indifference standard against defendant in her individual capacity), *report and recommendation adopted sub nom.*, 2021 WL 3741484 (D. Minn. Aug. 24, 2021).

As for Plaintiff's medical screening claim against both "Jane Doe" and Sheriff Kamerud, Plaintiff fails to plead facts showing how, by not screening for any underlying health conditions, Defendants deliberately disregarded his medical needs. Plaintiff's First Amended Complaint does not show how "Jane Doe" and Sheriff Kamerud knew of or even contributed to the lack of a medical screening at the Jail. And even if it had, at best Plaintiff's claim amounts to a disagreement with the way his treatment was handled, and "a difference of opinion between an inmate and prison medical personnel regarding appropriate medical treatment does not" amount to a deliberate indifference. *Bellecourt*, 784 F. Supp. at 634 (citation omitted).

Accordingly, since Plaintiff has not satisfied the pleading standards for his deliberate indifference claim, this Court recommends the dismissal of Plaintiff's deliberate indifference claims related to his medication delay and medical screening against Sheriff Kamerud in his official capacity and "Jane Doe" in her official and individual capacity.

### ii.    COVID-19 Claim

Plaintiff also alleges that "Jane Doe" and Sheriff Kamerud were deliberately indifferent to treating his health needs by placing him in the Jail's general population, where he was at an allegedly greater risk of contracting COVID-19. For support, he refers to guidelines under the CDC and ICE recommending quarantining all new inmates for fourteen days and screening detainees.

But Plaintiff's First Amended Complaint pleads no facts showing how "Jane Doe" or MEnD Correctional Care PLLC were connected or involved in a decision made by the

17

Jail staff to place Plaintiff in general population instead of in quarantine. Nor has Plaintiff demonstrated how Carver County's custom or policy of placing inmates in general population, rather than screening and quarantining him, shows that his medical needs were deliberately disregarded by Carver County. At most, Plaintiff's First Amended Complaint suggests negligence, which is not enough to meet the high standard of deliberate indifference. *See Stai v. Deshane*, 183 F. Supp. 3d 937, 943 (D. Minn. 2016) ("[D]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct.") (quotations omitted). Plaintiff has also not pled any facts showing how his placement in general population created a risk more severe than that faced outside the Jail. *Jorgensen v. Birkholz*, No. 20-CV-2349 (NEB/DTS), 2021 WL 3476709, at *11 (D. Minn. Feb. 18, 2021) ("Many of the 'grave risk[s]' Petitioners face are no more grave than the risks faced by those outside FPC-Duluth.") (citation omitted) (alteration in original).

Because Plaintiff has failed to sufficiently plead facts showing a deliberate indifference claim about his placement in general population against Sheriff Kamerud in his official capacity and "Jane Doe" in her official and individual capacity, this Court recommends dismissal of Plaintiff's deliberate indifference COVID-19 claim.

### 5. Plaintiff's Conditions-of-Confinement Claim (Count Three)

Plaintiff alleges a condition-of-confinement claim in Count Three of his First Amended Complaint. Count Three is directed only at Carver County. To support his claim, Plaintiff alleges that Carver County has a policy of violating immigration detainees' due process rights by holding immigration detainees in pecuniary conditions.

(1st Am. Compl. ¶¶ 20–22; 62–66.) Defendants argue Plaintiff fails to state a claim because immigration detainees are like pretrial detainees under the law, and the conditions at the Jail are not unconstitutional. (Defs.' Mem. 17–18.)

As an immigration detainee, Plaintiff's status is like the status of pretrial detainees. *See Ukofia v. Dep't of Homeland Sec.*, No. 09-CV-0017 (PJS/JJG), 2010 WL 597059, at *6 (D. Minn. Feb. 17, 2010) (citations omitted) ("The status of an immigration detainee is similar to the status of a pretrial detainee."). Pretrial detainees "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (citations omitted); *see also Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) (finding that individuals who have been civilly detained or committed "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"). That said, "not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (citation omitted).

The Eighth Circuit in *Stearns v. Inmate Services Corporation* outlined "two ways to determine whether conditions rise to the level of punishment." 957 F.3d 902, 907 (8th Cir. 2020). Either a "plaintiff could show that the conditions were intentionally punitive," or, if there was no express demonstration of an intent to punish, "the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose."[10] *Id.* Under the second way, "the

---

[10]    Defendants argue the appropriate standard here is deliberate indifference. (Defs.' Mem. 18.) However, that standard is only applied where a "pretrial detainee claims that

fighting question is whether [the county's] policies or customs that caused the conditions of [plaintiff's] confinement were reasonably related to a legitimate goal or were excessive as compared to that goal." *Id.* at 908. "If found to be arbitrary or excessive, it is permissible to 'infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.'" *Id.* at 908–09 (quoting *Bell*, 441 U.S. at 539).

Plaintiff has pled no facts showing how Carver County's policy of holding immigration detainees at the Jail expressed an intent to punish. Nor has he pled sufficient facts to show his confinement under that policy was not reasonably related to a legitimate goal or, if it was so related, whether his confinement is excessive as compared to that legitimate goal. *Id.* at 908. At most, Plaintiff alleges that he was held overnight in a correctional facility. However, the mere fact that immigration detainees are held at the Jail, which establishes certain conditions of confinement to ensure security and order, does not inherently mean that the conditions for immigration detainees are punitive. *See Bell*, 441 U.S. at 561 ("Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both.").

Because Plaintiff fails to allege sufficient facts supporting his condition-of-confinement claim, this Court recommends the dismissal of Count Three.

_____

prison officials unconstitutionally ignored a serious medical need or failed to protect the detainee from a serious risk of harm," which is not the case for this claim where Plaintiff has alleged his conditions of confinement rise to the level of punishment. *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

### C.    Rehabilitation Act Claim (Count Four)

This Court notes that it is unclear whether Plaintiff intended to assert his Rehabilitation Act claim in Count Four. As discussed above, Plaintiff filed his motion to amend the original Complaint on November 8, 2021, with an attached proposed First Amended Complaint. The attached First Amended Complaint included Plaintiff's Rehabilitation Act claim in Count Four. However, it appears Plaintiff does not wish to pursue this claim. This Court notes that Plaintiff filed an opposition to Defendant's first motion to dismiss the original Complaint wherein he voluntarily sought dismissal of his Rehabilitation Act claim as set forth in his original Complaint:

> In light of Carver Defendants' demurrer and ensuing further review of applicable case-law, Mr. Zongo voluntarily seeks dismissal of his section 504 claim. He does agree with Carver Defendants that his allegations under the latter claim are more appropriately cognizable under his deliberate indifference claim.

(Doc. No. 26 at 24–25.) The Rehabilitation Act claim in Plaintiff's original Complaint is identical to his Rehabilitation Act claim in Count Four of the Amended Complaint. Thus, it appears Plaintiff did not intend to pursue his Rehabilitation Act claim.

Still, in an abundance of caution, this Court will review Count Four under the applicable motion to dismiss standards. In Count Four, Plaintiff alleges that Sheriff Kamerud in his official capacity violated the Rehabilitation Act by failing to provide him, an allegedly disabled person because of his acute pancreatitis, quarantining and medical screening before placing him in general population. As discussed above, since Sheriff Kamerud was sued in his official capacity, Plaintiff's claim is against Carver County.

Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998). "To prevail on a claim under Section 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998).

Here, even assuming Plaintiff's acute pancreatitis could be considered a disability and that "medical screening" and "intake isolation" could be considered a program or activity, Plaintiff's First Amended Complaint does not plead facts sufficient to show how he was discriminated against. Discrimination can be alleged by pleading facts of intentional discrimination or the failure to make reasonable accommodations. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). Plaintiff's First Amended Complaint has not pled any facts that he was intentionally discriminated against. Nor does Plaintiff's First Amended Complaint plead any facts showing how Sheriff Kamerud failed to reasonably accommodate his access to the benefits of "medical screening" and "intake isolation." Thus, because Plaintiff has not pled facts sufficient to demonstrate a claim under the Rehabilitation Act, this Court recommends that it be dismissed.

22

### D.    State Tort Claims (Counts Five and Six)

In Counts Five and Six, Plaintiff alleges state law claims for unjust enrichment against Carver County and false imprisonment against Sheriff Kamerud (1st Am. Compl. ¶¶ 73–82.) This Court has already recommended dismissal over the claims which the Court had original jurisdiction (i.e., the federal claims). District courts may decline to exercise supplemental jurisdiction over state claims such as these if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because this Court recommends dismissal over the federal claims, this Court also recommends the Court decline to exercise its supplemental jurisdiction over the remaining state claims.

## RECOMMENDATION

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant's Motion to Dismiss (Doc. No. 27) be **GRANTED**; and

2.    This action be **DISMISSED WITHOUT PREJUDICE**.


Dated: May 23, 2022                         *s/ Becky R. Thorson*
                                            BECKY R. THORSON
                                            United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).